UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

JOY ANGEL,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

CASE NO. 21-cv-1827

OPINION & ORDER
[Resolving Doc. 1]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Joy Angel seeks judicial review of the Social Security Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[1] The Court finds that substantial evidence supports the Commissioner's decision and **AFFIRMS** the Commissioner's decision.

I.     BACKGROUND

On June 24, 2019, Plaintiff Joy Angel applied for disability insurance benefits and supplemental security income, alleging that she became disabled beginning on August 19, 2009.[2] After her claims were denied in October 2019, she requested and was granted a hearing before an ALJ.[3] On October 29, 2020, the ALJ issued a decision that found Angel had multiple impairments, including several that the ALJ agreed were severe, but that

---

[1] Doc. 1.
[2] Doc. 6 at 16.
[3] *Id.*

Case No. 21-cv-1827
Gwin, J.

Angel retained residual functionary capacity to work and was thus ineligible for disability benefits.[4] On August 25, 2021, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the Commissioner's final decision.[5] Plaintiff now seeks judicial review before this Court.

## II. LEGAL STANDARD

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."[6]

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[7] Thus, "it is not necessary that this court agree with the Commissioner's findings,"[8] because the Commissioner enjoys a "zone of choice" within which to decide cases without being second guessed by a court.[9]

## III. ANALYSIS

ALJs follow a five-step test set to decide whether an individual is entitled to disability support. The ALJ must sequentially determine:

1. If claimant is doing substantial gainful activity, she is not disabled.

2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe

---

[4] *Id.* at 19–25.
[5] Doc. 12 at 2.
[6] *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).
[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).
[8] *Id.*
[9] *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Case No. 21-cv-1827
Gwin, J.

> impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> 5. Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.[10]

"Under the first four steps, the claimant has the burden of proof. At step five, however, the burden of proof shifts to the Commissioner."[11]

Here, the ALJ determined that Plaintiff satisfied the first two steps: she had not engaged in substantial gainful activity since August 19, 2009, and she had multiple severe impairments including degenerative disc disease, osteoarthritis, fibromyalgia, cataracts, asthma, coronary artery disease, and more.[12] Additionally, at Step 3, the ALJ determined that Plaintiff had several non-severe impairments including obesity, sleep apnea, left rotator cuff tendinitis, and more.[13]

But the ALJ also found that Plaintiff did not satisfy Steps 3, 4, and 5 because her impairments did not prevent her from performing her past relevant work as a file clerk and

---

[10] *Anthony v. Astrue*, 266 F. App'x 451, 456–57 (6th Cir. 2008) (citations omitted).
[11] *Id.* (citation omitted).
[12] Doc. 6 at 19.
[13] Plaintiff also had non-severe mental impairments such as adjustment and anxiety disorder, but she does not contest here the ALJ's determination that her mental disorders "do not cause more than minimal limitation" on her ability to perform basic mental work activities. (Doc. 6 at 20).

Case No. 21-cv-1827
Gwin, J.

she had residual functional capacity to do light work.[14]

In deciding this, the ALJ weighed Plaintiff's statements "concerning the intensity, persistence, and limiting effects" of her impairments against objective evidence in the record.[15] The ALJ discussed at length the ways in which he found the record only "partially consistent" with Plaintiff's allegations. For example, a December 2, 2017 MRI showed that Plaintiff had severe L5-21 degenerative disc disease, and a May 11, 2020 X-ray of Plaintiff's lumbar spine further confirmed advanced degenerative disc disease.[16] The ALJ concluded these records were consistent with Plaintiff's testimony about weight-bearing limitations and back pain.

But on the other hand, the ALJ's record review also showed that Plaintiff had multiple physical examinations at which she presented no clear signs of muscular weakness or atrophy that would suggest high levels of inactivity, and that she had shown little sign of being unable to stand and walk independently.[17] Two state medical consultants concluded that Plaintiff could sustain light work.[18]

Similarly, the record was partially inconsistent with Plaintiff's claims of various gastrointestinal issues: Plaintiff claimed that she had difficulty keeping down food and that she suffered from chronic diarrhea, but she had steadily gained weight since her alleged disability onset date, and several exam records described her as "well-nourished."[19] She

---

[14] *See* Doc. 6 at 22–25.
[15] *Id.* at 23.
[16] Id. at 23.
[17] *Id.* at 23. *See also id.* at 1295 (radiology examination finding no acute abnormalities in knees, hands, feet, or left ankle, and "minimal scattered degenerative changes."); *id.* at 1278–79 (physical exam record noting normal motor function including normal gait, power, and coordination and that "Patient does not have [...] objective muscle weakness[.]").
[18] *Id.* at 24, 79–80, 107.
[19] *Id.* at 23. *See also id.* at 408 (physical exam stating "Weight Concern: No" and noting that patient appears "well-developed and well-nourished."); *id.* at 1278 (physical exam noting that patient is "well appearing, alert, comfortable, in

Case No. 21-cv-1827
Gwin, J.

had documented, intermittent flare-ups of more severe gastrointestinal issues, but those episodes often occurred years apart.[20]

Plaintiff's eye examinations showed some loss of visual acuity, but the ALJ found that the loss was not so grave that she could not navigate an ordinary workplace. Her left eye had responded favorably to cataract surgery and had improved from 20/100 to 20/30 distance vision with correction. Her right eye had 20/25 corrected distance vision despite cataract issues.[21]

Finally, the ALJ concluded that several of Plaintiff's alleged impairments lacked sufficient documentation: her medical records showed that she had asthma, lung nodules, and emphysematous lung disease,[22] but she proffered no pulmonary function test to show the impact of these impairments. At various times, Plaintiff's medical examination records noted that she showed no shortness of breath.[23]

These facts—drawn from the record and discussed in the ALJ's opinion—show the care with which the ALJ weighed conflicting evidence in the record to determine whether Plaintiff qualified as disabled.

Yet in her brief before this Court, Plaintiff argues that (1) the ALJ failed to account for the severity of Plaintiff's obesity and her obesity's exacerbating effect on her other impairments,[24] and relatedly that (2) the ALJ impermissibly cherry-picked the record in

---

no acute distress, well-hydrated, well-nourished.")
[20] Doc. 6 at 23.
[21] *Id*. at 24, 693. *See also id*. at 695 (medical record noting that Plaintiff's right eye is "not impaired but awaiting cataract surgery" and her left eye is "much improved post cataract removal; still in post op period but was 20/30 on day 1.")
[22] *Id*. at 577 (April 2013 CT scan identifying a lung nodule in right lower lobe that is "unchanged in size" compared to scans from December 2009 and "most likely benign" and "lungs [...] otherwise clear.")
[23] *See, e.g., id*. at 1278 (physical exam noting "lungs clear to auscultation. No wheezing, rhonci, rales."); *id*. at 700 (patient "denies any chest pain or shortness of breath.")
[24] Doc. 8 at 17.

Case No. 21-cv-1827
Gwin, J.

deciding which medical evidence to credit.[25] Neither argument succeeds.

As to Plaintiff's obesity argument, it is irrelevant that the ALJ did not designate Plaintiff's obesity as a severe impairment. "In the Sixth Circuit, the severity determination [at Step 2] is a de minimis hurdle" meant to "screen out totally groundless claims."[26] Thus, if an ALJ finds that the claimant has any severe impairments, "[t]he fact that some of [a claimant's] impairments were not deemed to be severe at step two is […] legally irrelevant."[27]

Because the ALJ found that Plaintiff had several severe impairments, Plaintiff cleared Step 2 regardless of whether the ALJ found her obesity to be an additional severe impairment. Then, at Step 3, the ALJ considered and discussed the combined effects of Plaintiff's impairments—severe and non-severe alike—on Plaintiff's disability status. This was the proper procedure for evaluating Plaintiff's record.

As to whether the ALJ "play[ed] doctor,"[28] it is true that "[w]here the uncontroverted medical evidence in the record is entirely *consistent* with a witness's testimony, an ALJ may not disregard that evidence by claiming that it is incredible."[29] But "[a]n ALJ faced with *conflicting* medical evidence, however, must necessarily make credibility determinations. Where there are conflicts regarding the evidence, an ALJ's findings of credibility are entitled to great deference."[30] Thus, the ALJ was both justified in weighing and required to

---

[25] *Id.* at 24.
[26] *Anthony v. Astrue*, 266 F. App'x at 457.
[27] *Id.*
[28] Doc. 8 at 22.
[29] *Anthony v. Astrue*, 266 F. App'x at 460 (emphasis in original).
[30] *Id.* (citation omitted) (emphasis in original).

Case No. 21-cv-1827
Gwin, J.

weigh the conflicting evidence in Plaintiff's record.

Again, the Court is conscious that the record was "partially" consistent with Plaintiff's claims. But even when "some evidence supports [a claimant's] argument that [s]he is unable to perform light work[,]" the Court's review is limited to determining "whether substantial evidence supported the ALJ's residual functional capacity determination."[31] The Court finds that it did.

### IV.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision to deny Plaintiff disability insurance benefits and supplemental security income.

IT IS SO ORDERED.

Dated: March 30, 2023                            *s/       James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[31] *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018).